DELFINA RIVERA, demandante y apelante, *v.* FRANCISCO GARCÍA MANZANARES y CATALINA MANZANARES, demandados y apelados.

No. 5415.—*Sometido:* Abril 24, 1931. *Resuelto:* Mayo 18, 1931.

*González Fagundo & González Jr.,* abogados de la apelante; *A. Aponte* y *P. Pérez Pimentel,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Delfina Rivera, como heredera testamentaria de su esposo

Juan Méndez, demandó a Francisco García Manzanares y a Catalina Manzanares, en cobro de cuatrocientos dólares. Alegó que la deuda procedía de cierto pagaré que Méndez firmó a favor del Banco Territorial para acomodar a los demandados y que se vió obligado a satisfacer por no haberlo satisfecho los demandados a su vencimiento. En su contestación la parte demandada alegó haber pagado a Méndez la deuda resultante de la transacción a que la demanda se refiere.

Fué el pleito a juicio. Presentó la demandante el testamento de su esposo, el acta de defunción del mismo, el pagaré con nota de haber sido satisfecho por Méndez y declaró en persona que estaba enterada de toda la transacción y que días antes de morir Méndez trató de cobrarle a Manzanares y no pudo conseguirlo, constándole que la deuda estaba en todo su vigor.

La de la parte demandada, fué toda prueba testifical. Declaró el demandado García Manzanares, en parte así:

"Explique al tribunal cómo fué la transacción ésa del pagaré.— Que yo tomé un dinero a préstamo en el Banco Territorial y Agrícola de Caguas, y don Juan Méndez me sirvió de fiador para tomar dicho dinero al Banco, y cuando se venció el documento realmente, yo no tenía el dinero para recoger la obligación del Banco. Como yo siempre había tenido negociaciones con él, y él me había dado la firma por varios años, porque él me protegía en mi negocio, al ver que no podía pagar la obligación al Banco, fuí donde don Juan Méndez a su establecimiento y le dije: Don Juan, yo ese documento no puedo recogerlo, porque no tengo dinero, pero yo tengo mercancías y usted puede ir a mi botica y coger el dinero en mercancías, y así de esa manera usted no se perjudica. Y don Juan no tuvo entonces inconveniente y me dijo que sí. Me fuí a la botica y a los pocos días me llamó por teléfono, como a los dos días que iría por allá a escoger las medicinas, y al ir a la botica vió la caja registradora, y me dijo: ¿Tú no tendrías ningún inconveniente en dejarme la caja registradora por la mía, y coger el resto en medicinas? Como la mía valía más que la de él, le dije que no tenía inconveniente e hicimos el negocio, y tan pronto se terminó eso fuí al Banco Territorial y Agrícola y le dije lo que había hecho, por lo cual se entenderían en

el Banco con don Juan Méndez y entonces el Banco quedó en que hablaría con don Juan y él entonces quedó en recogerlo.''

Sigue explicando más en detalle la transacción, y contestando a la pregunta: ''Cuando se realizó la operación, ¿por qué usted no recogió el documento?'', dijo:

''Porque en esa época el documento no se renovó, se dejó en el Banco, y al mucho tiempo el Banco Territorial le embargó a don Juan Méndez Santiago por otras cantidades que él debía, y al embargarle, el documento estaba en el Banco y yo fuí donde él, y él me dijo: no te apures que yo voy a vender una finca y pagaré todos esos documentos, y entonces yo fuí para allá en la creencia de que él lo pagaría, y efectivamente él vendió la finca y recogió todos los documentos.''

La declaración del demandado está plenamente corroborada por otros testigos, entre ellos uno que era dependiente del propio establecimiento de Méndez.

Declaró también por la parte demandada el testigo José Vercher, Director-Cajero del Banco Territorial en Caguas, así:

''¿Usted conoce a don Juan Méndez?—Cómo no, lo conocí.

''¿Usted puede decirle a la corte si en relación con ese documento don Juan Méndez le hizo alguna manifestación?—Sí, señor, yo puedo declarar que don Juan Méndez Santiago me dijo en una oportunidad que había tenido que aceptar del señor Manzanares una caja registradora y una mercadería por el importe de este documento.''

Con esa prueba contradictoria como base, dictó sentencia la corte declarando la demanda sin lugar, resolviendo de tal modo el conflicto en contra de la demandante. No conforme ésta, apeló. En su alegato señala la comisión de tres errores. Uno, por haberse infringido el artículo 102 de la Ley de Evidencia; otro, por haberse infringido el artículo 1216 del Código Civil en relación con el 1247 del propio código, y otro, por haberse apreciado erróneamente la prueba.

Es cierto que de acuerdo con los números octavo y noveno del artículo 102 de la Ley de Evidencia, el pagaré entregado a Méndez debe presumirse que le pertenece y que

dicho pagaré se presume pagado desde el momento en que el banco lo entregó a uno de los deudores, Méndez. Pero se trata de una presunción controvertible, que fué en efecto controvertida en este caso por las alegaciones y las pruebas, dando crédito la corte sentenciadora a éstas en pro de la extinción de la obligación. Además, no se trataba de un documento del que consta una obligación directa de pago que se entrega siempre al satisfacerse, como sucedió cuando Méndez, que aparecía en el pagaré como deudor solidario, pagó la deuda al banco. También García Manzanares, a quien creyó la corte, explicó satisfactoriamente lo ocurrido. No es, pues, posible concluir que se cometiera el primero de los errores señalados.

Tampoco se cometió el segundo. Se sostiene que prescribiendo como prescribe el artículo 1247 del Código, que deberán hacerse constar por escrito, aunque sea privado, los contratos en que la cuantía de las prestaciones, de uno o de los dos contratantes exceda de trescientos dólares, y atendida la prevención, contenida en el artículo 1216 del propio Código, no pudo dar la corte por probado aquí, por la simple prueba de testigos, el pago por García Manzanares a Méndez de la deuda que con él·tenía. Es verdad que es así y·es verdad también que los jueces deben ser muy cautelosos en la apreciación de la prueba testifical en estos casos, pero ello no quiere decir que el hecho en controversia no pueda acreditarse por la sola prueba de testigos cuando se trata, como aquí, de las mismas partes contratantes y especialmente cuando la prueba presentada se admitió sin objeción alguna. En el caso de *Santiago* v. *Cuevas Padilla,* 41 D.P.R. 116, dijo esta corte: "El artículo 1247 del Código Civil no excluye prueba testifical cuando se trata como en este caso de las mismas partes que contrataron." Y luego, en reconsideración, "Se ratifica la interpretación del artículo 1247 del Código Civil en el sentido de que dicho precepto legal no excluye la prueba de testigos cuando se trata de las mismas partes contratantes, debiendo, por supuesto, ser una

prueba testifical sólida y clara, que merezca entero crédito, para que pueda ser tenida en consideración.''

El tercero y último de los errores señalados es una consecuencia de los dos primeros. Cae, pues, por su base.

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Señor Wolf no intervino.