*La sentencia debe ser confirmada.*

PASCUAL FÉLIX ORTEGA, representado por su padre AGUSTÍN FÉLIX, y AGUSTÍN FÉLIX personalmente, demandantes y apelados, *v.* SAN MIGUEL y GONZÁLEZ, sociedad regular colectiva y ANDRÉS SAN MIGUEL y ENRIQUE GONZÁLEZ individualmente, y MANUEL-ROSSY, demandados, y apelante el segundo.

Núm. 8956.—*Sometido:* Diciembre 13, 1944. *Resuelto:* Enero 15, 1945.

416

*Edelmiro Martínez Rivera,* abogado del apelante; *Arturo Ortiz Toro* y *Jorge Ortiz Toro,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

En la demanda radicada en este caso se exponen, en síntesis, los hechos siguientes: El 14 de junio de 1941, como a las once de la noche, el demandante viajaba como pasajero en una guagua pública propiedad del demandado Manuel Rossy, de Guaynabo hacia Santurce, por su derecha y a una velocidad de 35 millas por hora. La guagua chocó con un rolo o cilindro de vapor propiedad de Robert A. Prann, quien lo había dado en arrendamiento "a los co-demandados Andrés San Miguel y Enrique González, bien en su carácter personal, o ya a la sociedad demandada (San Miguel y González) en su carácter colectivo". En el momento del accidente el cilindro era conducido en la misma dirección que la guagua, al establecimiento del Sr. Prann y se encontraba en aquel sitio sin tener luces para dar aviso de su presencia y evitar un choque. Como consecuencia de la negligencia de los demandados, la guagua chocó por su lado derecho con la esquina izquierda trasera del cilindro causando al demandante heridas, lesiones y sufrimientos físicos y morales, por los cuales reclama una indemnización de $7,000.

Los demandados Andrés San Miguel y Enrique González alegaron como excepción previa: (*a*) que la demanda no aduce hechos suficientes para determinar una causa de acción; (*b*) que la demanda es ambigua, ininteligible y dudosa; y (*c*) que en la demanda existe un defecto de parte demandada. Los demandados no especificaron los motivos en que se fundaban dichas impugnaciones y la excepción previa fué declarada sin lugar.

Antes de contestar la demanda los mismos demandados solicitaron que se ordenase al demandante elegir y especifi-

car "si la acción que pretende ejercitar contra los comparecientes ha de continuarse dirigida contra ellos individualmente o contra la supuesta sociedad regular colectiva 'San Miguel y González' ''. La moción fué declarada sin lugar. Contestaron entonces los demandados. Negaron los hechos esenciales de la demanda y alegaron como defensas especiales : (a) defecto de parte demandada, por no aparecer de la demanda "una clara referencia y específica designación de la parte contra quien se formula la reclamación''; (b) que la demanda es ambigua, ininteligible y dudosa; y (c) que los hechos alegados son insuficientes para constituir causa de acción contra los demandados individualmente, ni contra ambos conjuntamente. Como materia nueva, alegaron que en el accidente no intervino acto u omisión alguna de su parte; que la causa próxima e inmediata del accidente fué la negligencia del demandante y la del conductor de la guagua en que aquél viajaba; que aun cuando se estableciera la existencia de negligencia por parte de los demandados, fueron el demandante y el conductor de la guagua los que tuvieron la última oportunidad para evitar el accidente; y, por último, que el demandante, como pasajero de la guagua, asumió todos los riesgos que pudieran surgir de la forma negligente en que dicho vehículo era conducido por la carretera, siendo obligación del demandante advertir al chófer de los peligros a que le estaba exponiendo.

El presente recurso ha sido interpuesto contra la sentencia por la cual se declara con lugar la demanda "en cuanto al demandado Andrés San Miguel solamente'' y se le condena a pagar al demandante una indemnización de $3,500, más las costas y $350 para honorarios.

El primer error que se imputa a la corte inferior es el de haber desestimado la excepción previa a la demanda y las defensas especiales alegadas en la contestación.

El artículo 106 del Código de Enjuiciamiento Civil dispone que "la excepción previa deberá especificar con precisión los

motivos en que se funde cualquiera de las impugnaciones héchas a la demanda''. Y añade: ''De no hacerse así será desestimada''. Los demandados se limitaron a alegar ''que en la demanda existe un defecto de parte demandada'', sin indicar el nombre de la persona o personas cuya presencia ante la corte pudiera ser necesaria para una completa determinación de la controversia. Pudieron los demandados ayudar a la corte a traer ante ella, como demandados, a todos los miembros de la sociedad ''San Miguel, González y Martínez'', con sólo informar a la corte que en dicha sociedad figuraba también como socio el señor José Martínez Reventós, quien no había sido emplazado y a quien ellos consideraban como parte necesaria en la acción. No solamente se abstuvieron de revelar ese dato, por ellos tan indiscutiblemente conocido como ignorado era por el demandante, si que a través de todo el procedimiento y hasta el acto del juicio ocultaron y negaron el hecho de que entre los demandados San Miguel y González y el señor Martínez existía una sociedad colectiva que se dedicaba a la construcción de obras públicas y privadas y se conocía con el nombre de ''San Miguel, González y Martínez''. Veamos cual fué la táctica, a nuestro juicio digna de censura, seguida por los demandados para evitar, no revelando la participación que en ella tenía el señor Martínez, que la sociedad ''San Miguel, González y Martínez'' quedase sometida a la jurisdicción de la corte mediante el emplazamiento del único socio que no había sido emplazado.

En la moción para que se ordenase al demandante a elegir si la acción había de continuarse contra los demandados San Miguel y González, individualmente, ''o contra la supuesta sociedad regular colectiva San Miguel y González'', los demandados se abstuvieron por segunda vez de revelar el nombre del socio que no había sido emplazado.

En la contestación, como defensa especial, los demandados reprodujeron la excepción de que en la demanda existe

un defecto de parte demandada "por no aparecer de la misma una clara referencia y específica designación de la parte contra quien se formula la reclamación" absteniéndose nuevamente de revelar el nombre del socio que no había sido emplazado.

No conformes con lo que ya hemos relacionado, al contestar la demanda negaron categóricamente y bajo juramento, en la forma siguiente:

"Niegan los demandados . . . que se dediquen o se hayan dedicado en las fechas a que se refiere la demanda a hacer negocios bajo su nombre individual y bajo nombre de sociedad alguna, ni en forma colectiva bajo nombre común alguno, *y que no existe ni ha existido sociedad entre ellos para dedicarse a empresa o negocio alguno."*

"Niegan que el rolo con que se alega chocó dicho vehículo estuviera arrendado a los demandados Andrés San Miguel y Enrique González, ni individualmente a ellos ni conjuntamente en su carácter personal o como sociedad, *ni a ninguna sociedad de que los demandados sean socios o formen parte;* niegan la existencia de contrato alguno que conecte a los demandados con el rolo o con el manejo o custodia del mismo . . ." (Bastardillas nuestras.)

No hubo error en la desestimación de la excepción previa. Ésta no se ajustó a los requisitos del artículo 106 del Código de Enjuiciamiento Civil y la corte actuó correctamente al desestimarla. Tampoco erró la corte al declarar sin lugar la defensa especial sobre defecto de parte demandada, no solamente porque ella es una reproducción de la excepción previa, no privilegiada y ya desestimada, si que especialmente por ser incompatible con la prueba aducida por los mismos demandados, por la cual quedó claramente probado que los demandados San Miguel y González eran miembros de la sociedad San Miguel, González y Martínez.

Los señalamientos numerados del 5 al 10, ambos inclusives, pueden ser considerados como uno solo, por referirse todos ellos a la apreciación que de la evidencia hiciera la corte sentenciadora, en cuanto a la ocurrencia del accidente y a las causas que lo motivaron.

Hemos examinado detenidamente la transcripción de la evidencia. Esta es, como sucede en la mayoría de los casos de esta naturaleza, contradictoria.

La prueba del demandante tendió a demostrar que el cilindro era conducido por la carretera de Guaynabo a Santurce, para ser entregado a su dueño, Robert A. Prann, en su establecimiento situado en la carretera entre Santurce y Bayamón, cerca de la Cervecería Brugal; que el cilindro no llevaba luz alguna que pudiera servir de aviso a las demás personas que conducían vehículos por la misma carretera; que como única precaución para evitar posibles choques, los arrendatarios del cilindro enviaron un *truck,* el cual debía seguir al cilindro a una distancia como de cien metros e iluminarle con sus reflectores hasta que llegase a su destino; que cuando ya faltaba poco para llegar al establecimiento del señor Prann, el chófer del truck se retiró, dejando el cilindro en la carretera, sin luces propias y sin las del truck que hasta entonces habían iluminado su camino; que en el momento en que el cilindro caminaba por la derecha de la semicurva que entonces existía frente a la cantera de Iriarte, la guagua en que viajaba el demandante y que marchaba en la misma dirección que el cilindro se encontró repentinamente con éste, a pocos pies de distancia, sin que le fuera posible al chófer evitar el choque entre los dos vehículos. El hecho de que en el momento del accidente el cilindro no llevaba luces y no era seguido por un truck que le iluminara el camino, quedó establecido por las declaraciones de varios testigos y por las manifestaciones hechas por el conductor del cilindro en el sitio del accidente e inmediatamente después de haber ocurrido el choque, al efecto de que el culpable del accidente era el chófer del truck, quien les había abandonado dejándolos allí sin luces.

La prueba de los demandados tendía a probar todo lo contrario. Declararon sus testigos—con excepción del policía insular Salvador Más—que el cilindro llevaba dos luces

encendidas, una delante y otra detrás, y además, que, hasta el momento del accidente iba iluminado por las luces del camión que le seguía. El policía Más, llamado por los demandados, declaró en el mismo sentido que los testigos del demandante.

El juez sentenciador, quien tuvo ante sí y oyó declarar a los testigos de ambas partes, dió entero crédito a los del demandante y llegó a la conclusión de que aun cuando el chófer de la guagua en que viajaba el demandante había sido negligente al conducir dicho vehículo a una velocidad mayor de 35 millas por hora, ésa no fué la causa del accidente y sí la falta de luz en la parte trasera del cilindro. Estando esa conclusión ampliamente sostenida por la prueba, no estaríamos autorizados para alterarla, aun cuando creyéramos, que no lo creemos, que la corte inferior pudiera haber llegado a otra conclusión distinta. La conducción del cilindro en la forma establecida por la evidencia constituye negligencia.[1]

██ Los señalamientos 4 y 11 deben ser considerados conjuntamente. En el primero se alega que el tribunal recurrido erró al resolver que en marzo 12 de 1941 la sociedad San Miguel González y Martínez ya no existía, no pudiendo por consiguiente contratarse a su nombre el arrendamiento del cilindro; y en el segundo, que la sentencia por la cual se hace responsable al demandado San Miguel, individualmente, es errónea. Examinaremos la prueba para poder determinar si ella justifica las conclusiones a que llegó el tribunal inferior.

La sociedad industrial "San Miguel, González y Martínez" fué constituída por los señores Enrique González, Andrés San Miguel y José Martínez Reventós, mediante escritura pública otorgada en el pueblo de Ciales el 26 de mayo de 1938, siendo el propósito principal de la misma el remate

---

[1] Artículo 56 (*g*) de la Ley 140 de 1940; *Pérez* v. *Santiago*, 56 D.P.R. 763; *Winn* v. *Long*, 203 Cal. 758; *Martin* v. *Herzog et al.*, 228 N.Y. 164; *Arvo* v. *Delta Hardware Co., et al.*, 231 Mich. 488, 204 N.W. 134.

y construcción de obras públicas. Constituyóse la sociedad por un término de tres años, el cual debería expirar el 31 de diciembre de 1940. Las estipulaciones del contrato social que consideramos pertinentes al caso que estamos considerando, son las siguientes:

(a) "El socio don Enrique González González será el director de las obras y el administrador general de los intereses y bienes de la sociedad".

(b) "6. Esta sociedad se conocerá con el nombre de 'San Miguel, González y Martínez' y al firmar se hará con este nombre y agregando el nombre del socio que firme por ella, en esta forma: 'San Miguel, González y Martínez'.—Por: (y sigue el nombre del socio)".

El contrato para el arrendamiento del cilindro (Exhibit 1 del demandante) se titula así: "Contrato para el arrendamiento de un rolo de vapor entre los señores Robert R. Prann, apartado 144, San Juan, como dueño del mismo, *y Sres. San Miguel y González,* como arrendatario". Dicho contrato contiene, entre otras, la siguiente estipulación:

"8. El arrendatario asume desde el momento en que recibe el rolo, toda la responsabilidad que se origine por averías o accidentes de cualquier naturaleza."

El documento aparece suscrito así: "Aprobado: (manuscrito) R. R. P. Robert R. Prann.—Aceptado: (firmado) San Miguel González, por (Fdo.) Andrés San Miguel, 3426 Sant. 3/12/41."

¿Con quién contrató el Sr. Prann, dueño del rolo? Sigamos examinando la prueba.

El Sr. Prann declaró que el rolo es suyo y lo había alquilado a "San Miguel y González" el 12 de marzo de 1941; el arrendamiento lo pagó "San Miguel y González" y ellos dirigían el manejo del rolo después que salió de su establecimiento; la firma que aparece en el contrato es la de Andrés San Miguel.

El demandado Andrés San Miguel declaró: Que el rolo lo arrendó "San Miguel, González y Martínez"; que fué él

personalmente quien lo arrendó y quien fué a casa del señor Prann; que es suya la firma que aparece al pie del contrato. Preguntado, "Usted firmó ahí a nombre de San Miguel y González?", contestó: "Bueno, fué una distracción mía. Yo siempre firmaba San Miguel, González y Martínez. Yo ese día tuve una distracción"; que fué un error suyo el de no poner la parte de Martínez; que él nunca ha estado asociado con González solo; que él entiende que no tenía que firmar por Martínez ni poner su nombre; que siempre ponía el nombre de Martínez, menos ese día; que él era quien le pagaba el sueldo al maquinista del rolo, por cuenta de San Miguel, González y Martínez; que fué él quien ordenó la devolución del rolo al Sr. Prann.

El conflicto que surgió de toda la prueba y de las incongruencias entre lo alegado en su contestación y lo declarado en la vista por el demandado San Miguel fué resuelto en su contra por la corte sentenciadora, a nuestro juicio muy justificadamente. ¿En qué momento dijo verdad el demandado San Migual, cuando alegó bajo juramento que el rolo no había sido arrendado "a ninguna sociedad de que los demandados sean socios o formen parte" o cuando declaró en el acto de la vista que había sido arrendado a la sociedad San Miguel, González y Martínez, de la cual ambos demandados son socios? La corte estuvo justificada al no dar crédito a lo declarado por el demandado.

Ya hemos visto que de acuerdo con los términos expresos del contrato social, el socio don Enrique González era director y administrador de los intereses y bienes de la sociedad. Por lo tanto, habiendo un socio especialmente encargado de la administración, es muy dudoso que el socio San Miguel estuviera facultado para contratar a nombre de San Miguel, González y Martínez el arrendamiento del rolo. Véanse: Artículos 1583, 1584, 1586 y 1588 del Código Civil y 105 y 108 del Código de Comercio. Pero aun cuando asumiéramos que el señor San Miguel, como miembro de la so-

ciedad, estaba facultado para contratar a nombre de ésta, el hecho indiscutible es que el señor San Miguel no contrató a nombre de la sociedad San Miguel, González y Martínez y sí a nombre de una sociedad inexistente.

Convenimos con el apelante en que es errónea, por ser demasiado general, la conclusión de la corte inferior en cuanto a que la sociedad San Miguel, González y Martínez no estaba facultada para celebrar el contrato de arrendamiento, por haber expirado el término de su duración con anterioridad a la fecha en que se efectuó el arrendamiento. El error, sin embargo, en nada ha podido perjudicar al apelante, pues ya hemos visto y resuelto que el demandado San Miguel no contrató a nombre de dicha sociedad.

Habiéndose demostrado que fué el demandado San Miguel quien personalmente hizo las gestiones para el arrendamiento del cilindro; que el contrato no fué hecho ni firmado a nombre de San Miguel, González y Martínez, según lo requiere el contrato social; y que la firma "San Miguel y González," a nombre de la cual se firmó el contrato, nunca ha existido, opinamos que la corte inferior no erró al resolver que el demandado Andrés San Miguel era el verdadero y único arrendatario del cilindro y como tal responsable de los daños causados al demandante.

*La sentencia recurrida debe ser confirmada.*